THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES LAWSON, Defendant-Appellee.

Fourth District   No. 13168

Opinion filed May 13, 1976.

TRAPP, P. J., dissenting.

Basil G. Greanias, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, of counsel), for the People.

Glenn O. Fuller, of Hurt, Fuller & Hopp, of Decatur, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant was indicted by a Macon County grand jury on November 6, 1974, for unlawful delivery and unlawful possession of a controlled substance. According to the indictment the offenses occurred on November 15, 1973. A hearing was held on a pretrial motion by defendant to dismiss the indictment on the ground that the one-year delay denied defendant due process of law. The trial court dismissed the indictment. The State appeals.

Issue No. 1. Whether the trial court has the power to dismiss an indictment on a ground other than those listed in section 114—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 114—1).

Section 114—1(a)(1) through (10) sets forth various grounds for motions to dismiss indictments. Denial of the constitutional right to due process is not among the grounds listed. The State argues that the section is exclusive and that a trial court cannot dismiss except for the listed reasons.

This question was presented recently to the Illinois Supreme Court in *People v. Silverstein,* 60 Ill. 2d 464, 328 N.E.2d 316. In *Silverstein,* the appellate court affirmed the trial court's dismissal of an indictment because the actions of the prosecution in telling a witness he could not speak to defense counsel denied defendant due process. (*People v. Silverstein,* 19 Ill. App. 3d 826, 313 N.E.2d 309.) The Supreme Court reversed on the ground that the record failed to support the trial court's conclusion that the actions of the prosecutor had prejudiced the preparation of the defense. The court found it unnecessary to consider whether section 114—1(a) limits the power of a trial court to dismiss an indictment, in view of their holding that defendant was not denied due process.

■■ We find the appellate court's reasoning in *Silverstein* persuasive. A trial court has inherent authority to insure a defendant receives a fair trial. If we were to hold, under the circumstances here present, that the trial court had no authority to dismiss the indictment the case would then have to be tried on the merits, and the defendant could appeal an adverse result. In that appeal, however, the question of denial of due process occasioned by preindictment delay could not be an issue. That would be necessarily raised in a post-conviction proceeding in which another appeal would lie. Our heavily burdened court system ought not to countenance a procedure which involves a needless waste of judicial resources, and deliberately delays a decision essential to the final disposition of the case. Consequently we hold that section 114—1(a) does not preclude the trial judge from dismissing an indictment when it

properly determines that preindictment delay has resulted in a denial of a defendant's right to due process.

Issue No. 2. Whether the trial court properly found the delay between the offense and the indictment denied defendant due process.

The United States Supreme Court, in *United States v. Marion,* 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971), has made it clear that the Sixth Amendment right to a speedy trial does not come into play until a person has become, in some sense, an accused, whether that is by arrest, indictment or other formal charge. A defendant's primary safeguard against prejudice caused by a delay between the offense and his arrest or charge is the statute of limitations. However, the statute of limitations does not exclusively define a defendant's right with respect to events occurring prior to indictment. Preindictment delay which causes substantial, actual prejudice could require a dismissal of the indictment by virtue of the due process clause. *(Marion,* 404 U.S. 307, 324, 30 L. Ed. 2d 468, 481, 92 S. Ct. 455, 465.) As *Marion* makes clear not every delay will be a denial of due process. Instead, "a delicate judgment based on the circumstances in each case" *(Marion,* 404 U.S. 307, 325, 30 L. Ed. 2d 468, 481, 92 S. Ct. 455, 466) must be made. We first must determine when the "delicate judgment" of the trial judge is brought to bear, and also decide what factors are relevant to the rendering of that judgment.

■■ To begin with, the burden is on the defendant to establish that the delay between the alleged offense and the charge has caused substantial, actual prejudice to his ability to present a defense. Clearly the prejudice must be shown to be actual, and not merely speculative. *(Marion.)* The prejudice alleged is usually the defendant's inability to recall or to reconstruct his activities or recall his whereabouts at the time of the alleged offense. Some courts have held that the mere statement of inability to remember is insufficient to carry defendant's burden of establishing actual, substantial prejudice. *(State v. Brown* (Ore. App. 1975), 541 P.2d 491; *People v. Duran* (Colo. 1975), 535 P.2d 505; *State v. Bryson* (1972), 53 Hawaii 652, 500 P.2d 1171), and we agree. Unless that statement is supported by affirmative evidence of defendant's diligent efforts to reconstruct the events of the time when the offense was allegedly committed, by investigating sources which might refresh his recollection (such as employment records, the recollection of family and acquaintances or other sources appropriate under the circumstances or proof of loss of material witnesses or evidence), a trial judge has no evidentiary basis upon which to predicate a judgment that the delay has occasioned substantial and actual prejudice to defendant's ability to defend against the charge. See *State v. Hackett* (1975), 26 N.C. App. 239, 215 S.E.2d 832.

It is also part of defendant's burden to show the nexus between the

delay and the unavailability of the evidence or witnesses. *(United States v. Parish* (D.C. Cir. 1972), 468 F.2d 1129 (1972).) From the evidence presented, the trial court evaluates the existence and extent of the prejudice alleged. *(United States v. McGough* (5th Cir. 1975), 510 F.2d 598.) If the court finds no actual, substantial prejudice, the inquiry is ended since the mere possibility of prejudice does not violate the due process clause.

In the event the trial court finds prejudice, the burden then shifts to the State to show that the delay was not an intentional strategy to gain a tactical advantage over defendant* and that the delay was reasonable. *People v. Vanderburg* (1973), 32 Cal. App. 3d 526, 108 Cal Rptr. 104.

In the case at bar, and in the usual situation involving narcotics offenses, the State will attempt to show that at least a portion of the delay was reasonable, although deliberate, because of an ongoing undercover narcotics investigation. Certainly there exists a strong, legitimate, public interest in investigating and prosecuting narcotics offenses. Due to the nature of the crime, often the only effective way to investigate is to utilize agents who must remain undercover for long periods of time in order to develop the contacts that lead up the chain of narcotics distribution. *(People v. Allen,* 38 Ill. 2d 26, 230 N.E.2d 170.) Since an agent's usefulness is ended as soon as the first alleged offender is arrested or charged, that cannot occur until the end of the complete investigation. For these reasons, a certain amount of delay is reasonable.

---

*We are aware that some courts have inferred from the Supreme Court's language in *Marion* that the defendant must prove *both* actual prejudice *and* that the delay was to gain a tactical advantage. (See *United States v. Whiteside* (D. Del. 1975), 391 F. Supp. 1385 (1975); *People v. White* (1975), 59 Mich. App. 164, 229 N.W.2d 357; *State v. Rogers* (1975), 70 Wis. 2d 160, 233 N.W.2d 480; also see the Second District opinion in *People v. Holland,* 28 Ill. App. 3d 89, 327 N.E.2d 597.) Other courts have interpreted *Marion* in the disjunctive so that defendant may prove *either* prejudice *or* intentional delay to gain a tactical advantage. (See *Preston v. State* (Del. 1975), 338 A.2d 562, and cases cited therein.) At the very least the opinion is unclear upon this point. *United States v. Iannelli* (2d Cir. 1972), 461 F.2d 483. The court stated:

"Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Marion,* 404 U.S. 307, 324, 30 L. Ed. 2d 468, 481, 92 S. Ct. 455, 465.

The courts, which require defendant to prove both, seemingly assume this is required by the Supreme Court's language.

Nothing in the opinion in *Marion* mandates that conclusion for, as pointed out by the court in *Hamilton v. Lumpkin* (E.D. Va. 1975), 389 F. Supp. 1069, 1075, if that conclusion were correct it would have been unnecessary for the court to consider the claim of intentional tactical delay after the court had determined defendants had failed to prove actual prejudice. We are not presented with the question of whether proof that the delay was an intentional device to gain a tactical advantage alone without proof of prejudice would be a denial of due process. Such situations are likely to be extremely rare.

Whether a delay has become unreasonably long is a matter for the trial court. Evidence concerning the length and intensity of the investigation, when it started and terminated, and the frequency and pattern of "buys" are relevant to this determination. We purposefully refrain from holding that a presumption attaches to a delay of any certain duration. Each case must be weighed under its own circumstances. The State does not sustain its burden merely by saying that there was an ongoing undercover investigation.

If the trial court should determine that defendant was prejudiced and that the delay was reasonable, the court then engages in a "delicate judgment" defined in *Marion.* One of the most important factors to be considered is the applicable statute of limitations. The purpose of that statute is to bar prosecution of overly stale criminal charges and represents the legislative judgment as to when that moment has arrived. *Marion.*

The trial court should also keep in mind that the underlying concern in these cases is the risk of conviction of an innocent person. In this connection, it is important to consider the strength of the government's case, in terms of the reliability of the identification of defendant and the circumstances of the alleged offense. *Woody v. United States* (D.C. Cir. 1966), 370 F.2d 214; *Robinson v. United States* (D.C. Cir. 1972), 459 F.2d 847.

The judgment of the trial court, made after weighing the rights of the defendant and the legitimate interests of the State, will not be disturbed on review except when its judgment is not supported by the evidence or is otherwise patently in error.

In determining these questions, the procedure used by the United States District Court in *United States v. Wilford* (D. Del. 1973), 364 F. Supp. 738, is to be highly commended. The court declined to rule on defendant's pretrial motion. It found that the determination of prejudice could be more accurately made in the context of the evidence at trial. This has several advantages. If the ruling is not made until after trial, a pretrial hearing which requires that the State present essentially the same evidence it would use at trial, is unnecessary. In addition, a ruling after the close of the evidence at trial ensures that defendant will have made the most diligent efforts to recollect, efforts which he has no incentive to make for a pretrial hearing. Of course, both parties should be allowed a hearing to present testimony which is not intended to be produced at trial and is pertinent to the issues.

We turn now to the facts of the case at bar. Defendant is charged with an offense alleged to have occurred on November 15, 1973. The indictment was handed down on November 6, 1974, and defendant was

arrested shortly thereafter. The period of delay therefore consisted of one week short of a full year.

Defendant testified at the hearing on his motion that his first notice of the charge was when he was arrested. He had no memory of the day in question. Through inquiries of union officials and people at work, he learned that his job was on strike that day but was unsuccessful in learning where he was. He denied having sold drugs, admitted knowing the informer through efforts to promote concerts with the informer, and denied recognizing the Illinois Bureau of Investigation agent to whom he supposedly sold the drugs.

Steven Marada, an I.B.I. agent, testified that there was an undercover operation in Macon and surrounding counties which began in October, 1973, and terminated in September, 1974. The investigation involved seven undercover agents and at least five informers. Marada testified that the I.B.I. has no written regulations regarding the length of an investigation. It lasts as long as it is productive. The length of a delay before charging any defendants which might prejudice their ability to remember is not a factor in regard to terminating an investigation.

Louise Banks, the I.B.I. agent who made the "buy," testified that after February, 1974, she made no further drug purchases in Macon county. Through the summer of 1974, she worked in Piatt and Sangamon counties as part of the same investigation. She testified she worked with the same informant involved in this case until the summer of 1974. She had reviewed her reports on this case in order to refresh her recollection before coming to court. She remembered the events of November 15, 1973, but in some cases she would not remember specifics without looking at her reports.

■■ The trial court found, as a fact, that the delay of nearly a year had prejudiced defendant because of his inability to remember. The trial court also found that Agent Banks had stopped operating in Macon county in February, 1974, the informer in the summer of 1974, and that despite the alleged continuing nature of the investigation, no deliveries were made to any agent or informer in Macon county between February and June, 1974. The trial court stated: "My business is to weigh the constitutional rights of the defendant against the procedures used in a specific case by the authorities, and as before, I find the procedures unreasonable." The trial court has therefore made that "delicate judgment." His judgment, not being patently in error, will not be disturbed by this court.

The trial court in its written order, also found prejudice per se. This is not the standard to be used. Defendant had argued both per se and actual prejudice before the trial court. The entire record clearly reveals that the

court carefully considered the facts and engaged in a weighing process to find that defendant's constitutional rights had been violated.

For the reasons stated above, the judgment of the circuit court of Macon county is affirmed.

Judgment affirmed.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

The trial court found that a delay of approximately one year between the dates of the offenses and of the indictment was prejudicial, both per se and as a matter of fact. This court properly rejected the determination of per se prejudice.

The record does not support the conclusion of the trial court that the defendant has shown actual prejudice stated in the finding:

> "That the defendant has established by his sworn testimony in open court a plausible claim of inability to recall or reconstruct the events of the day of the offense, and has by his testimony shown that he has been prejudiced by the delay in prosecution."

It does not appear that a "plausible claim" establishes the actual prejudice which is the measure of due process. The record shows, however, that prior to the hearing on the motion to dismiss the indictment defendant filed his response to the prosecution's motion for discovery, and in such response stated the name and address of a witness whom he intended to call "Who was a witness to the alleged transaction out of which the indictment arose." In *Robinson v. United States* (D.C. Cir. 1972), 459 F.2d 847, and *United States v. Washington* (D.C. Cir. 1972), 463 F.2d 904, it was said that any inference of prejudice is negated where the defendant is able to present witnesses.

Defendant's testimony shows he was acquainted with the named informant to the extent that he had called at the informant's home on a number of occasions, assertedly for a discussion of other business. Such home was the place of the offense charged. It is interesting that while defendant testified that he could never do business with the informant in such other matters, he, nevertheless, called at the home an unrecalled number of times.

Defendant's testimony showed that he had read reports of the investigating agents concerning the sale. While not in this record, one may reasonably infer that such reports would show the precise date and time and identify the persons present.

Upon cross-examination, defendant was asked whether he would say that he has never seen the agent to whom he delivered the cocaine. He did

not deny that he had seen her, but stated, "I don't recall her," and proceeded to explain that on some occasions he knew the people at the informant's home, and that on other occasions there were people whom he did not know. There is no specific denial.

The opinion speaks approvingly of the procedure followed in *United States v. Wilford* (D. Del. 1973), 364 F. Supp. 738, which concluded that the determination of prejudice is more accurately made in the context of trial and noted that defendant has little incentive to recollect events or marshall his resources for defense at a pretrial motion.....

The issue of prejudice was thus determined in the appeal of the conviction in *Woody v. United States* (D.C. Cir. 1966), 370 F.2d 214; *Ross v. United States* (D.C. Cir. 1965), 349 F.2d 210; *United States v. Briggs* (2d Cir. 1972), 457 F.2d 908; *Bey v. United States* (D.C. 1965), 350 F.2d 467; *Robinson v. United States* (D.C. Cir. 1972), 459 F.2d 84; *United States v. Washington* (D.C. Cir. 1972), 463 F.2d 904, and *United States v. Jones* (D.C. Cir. 1975), 524 F.2d 834. Many cases held that no prejudice was shown, but in *Woody* the reviewing court determined that the identification was doubtful, that the informant subpoenaed by defendant claimed privilege and that a witness had died, while in *Ross* the identification of defendant was doubtful and there was no corroboration so that the convictions were reversed. That procedure is appropriate for adoption here.

As the opinion noted, the critical point for determination is the validity of identification of the defendant as the offender. Upon the record made in the procedure followed in this case, such point is never reached.

The trial court's judgment should be reversed and the cause remanded for further proceedings.